# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
      **JUDGE**

## <u>LETTER OPINION</u>

May 22, 2008

Abraham S. Alter
Langton & Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065
      *(Attorney for Plaintiff)*


Andreea Lechleitner
Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
      *(Attorney for Defendant)*



**RE:   Malloy v. Commissioner of Social Security**
      **Civ. No. 07-2730 (WJM)**

Dear Counsel:

      Plaintiff Aurella B. Malloy ("Malloy") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying Malloy's application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  There was no oral argument.  Fed. R. Civ. P. 78.  For the following reasons, the Commissioner's decision is **AFFIRMED**.

1

## Background and Procedural History

On December 1, 2004, Malloy filed concurrent applications for DIB and SSI, alleging disability due to cardiomegaly (enlarged heart) and hypertension as of April 15, 2004.  (R. at 83-84.)  The claims were denied initially on March 4, 2005, and upon reconsideration on June 30, 2005.  (R. at 22, 29.)  Upon Malloy's request, a hearing was held before Administrative Law Judge Dennis O'Leary ("ALJ") on September 14, 2006.  (R. at 12.)  Malloy appeared at the hearing with counsel.  (R. at 227.)

In a decision dated November 8, 2006, the ALJ denied Malloy's application for benefits.  (R. at 9-18.)  Applying the Commissioner's five-step analysis for determining eligibility for DIB and SSI, the ALJ first found that Malloy was not engaged in substantial gainful activity from the time of the alleged onset of her impairments.  (R. at 15.)  At step two, the ALJ determined that Malloy suffered from two severe impairments - hypertension and obesity.  (R. at 15.)  At step three, however, the ALJ found that these impairments, either alone or in combination, did not equal or meet any of the impairments listed in 20 C.F.R. § 404, Subpart P, App.1.  (R. at 15.)  Therefore, the ALJ continued to step four of the analysis and determined that Malloy could perform her past relevant work as a day care center worker.  (R. at 17.)  On January 4, 2007, Malloy filed a request for review of the ALJ's decision.  (R. at 7.)  The Appeals Council denied review on April 13, 2007, and therefore, Malloy has exhausted all administrative remedies.  (R. at 4.)

Malloy appeals the Commissioner's ruling and argues that the ALJ's decision was not supported by substantial evidence.  Specifically, she contends that the ALJ erred in his finding that: (1) her impairments of cardiomegaly and cardiomyopathy were not severe; and (2) Malloy retained the Residual Function Capacity ("RFC") to perform light work.  This appeal is now before the Court.

## Standard of Review

This Court exercises plenary review over the Commissioner's legal conclusions and is bound by the Commissioner's factual findings if they are supported by substantial evidence.  *See Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Sec'y of Health & Human Servs*., 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance.")  Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the

2

conclusions reached by the Commissioner.  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

This Court must affirm the ALJ's decision if it is supported by substantial evidence.  *See Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981).  It does not matter whether this Court, if acting *de novo*, would have reached a different conclusion.  *See Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).

---

## Discussion

### I.      Substantial evidence supports the ALJ's finding that hypertension and obesity were Malloy's only "severe" impairments.

Malloy unsuccessfully argues that her cardiomyopathy and cardiomegaly were not properly considered because the ALJ failed to find these conditions severe at step two of the five-step sequential evaluation process.  (Pl.'s Br. 20-24.)  The Court finds that the ALJ's determination at step two regarding the severity of her impairments is supported by substantial evidence.

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. § 404.1520(c).  An impairment is "severe" if it significantly limits a claimant's ability to do basic work activities.  *Id*.  The impairment must last or be expected to last for a continuous twelve-month period.  20 C.F.R. § 404.1509.  If the Commissioner determines that the claimant is suffering from a severe impairment, the inquiry at step three is whether the claimant's impairment(s) meets or equals a listing set forth in 20 C.F.R. § 404 Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  A claimant whose impairment meets or equals a listing is presumed disabled.  *Id*.  The analysis, however, proceeds to steps four and five if the Commissioner determines that the claimant's impairments do not meet or equal a listing.  *Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir. 1999).

It is undisputed that Malloy's history of high blood pressure is well documented. Dr. Justin Fernado, who examined Malloy at the Commissioner's request, noted in his report dated May 23, 2005, that Malloy indicated she was first diagnosed with high blood pressure twenty-six years ago.  (R. at 166.)  Treating notes from Malloy's physician Dr. Angel Lazo, Jr. dated January 2002 through June 2006, consistently state that Malloy suffers from uncontrolled high blood pressure.  (R. at 142-145, 148, 150, 152, 156, 158, 161.)  Dr. Lazo's treatment notes also indicate that Malloy was diagnosed with cardiomyopathy and hypertensive heart disease.  (R. 141, 163, 179, 181, 182, 185.)  A chest x-ray performed on July 15, 2002 showed Malloy has cardiomegaly, an enlarged

heart.  (R. at 191.)  Electrocardiogram ("EKG") tracings were within normal limits in May 2005, and demonstrated a nonspecific T-wave abnormality with possible left atrial enlargement in September 2006.  (R. at 190.)

Malloy has also been diagnosed with obesity.  (R. at 168.)  At 5'2" tall, she weighed 230 pounds at the time of the ALJ hearing.  (R. at 236-237.)  Malloy contends that her aforementioned conditions cause shortness of breath, dizziness, tiredness and swelling in her lower extremities.  (R. at 97, 130, 131, 232, 234.)  Malloy alleges she stopped working on April 15, 2004 due to her medical conditions.  (R. at 84.)
.

Contrary to Malloy's assertions that the ALJ should have found her cardiomyopathy and cardiomegaly "severe" at step two, the ALJ properly considered these conditions under step two of the analysis.  First, Malloy's cardiomyopathy and cardiomegaly are not independently severe impairments in themselves.  No evidence in the record demonstrates that these conditions affect her ability to perform basic work functions.  Dr. Fernando did not diagnose Malloy with a cardiac impairment, found that her heart had a regular rhythm and no murmur, gallop, or rub was audible.  (R. at 168.)  The results of EKG tracings in May 2005 were normal, and the September 2006 EKG showed only a nonspecific T-wave abnormality and possible left atrial enlargement.  (R. at 170, 190.)  The chest x-ray performed in July 2002 indicated no appreciable changes in Malloy's cardiomegaly when compared with a baseline study performed on April 12, 2001.  (R. at 191.)  No other medical evidence or expert opinions have been presented by Malloy which demonstrate that these conditions impaired her ability to perform basic work functions.  The record supports that ALJ's determination that Malloy's cardiomyopathy and cardiomegaly were not independent severe impairments.

Secondly, cardiomyopathy and cardiomegaly are treated as symptomatic conditions of Malloy's severe impairments of hypertension and obesity in the second and third step of the disability analysis.  Step three requires the Commissioner to determine whether the claimant's severe impairments, either individually or in combination, meet or equal a listing set forth in 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  A claimant whose impairments meets or equals a listing is presumed disabled.  *Id*.

Section 4 of the Listing of Impairments discusses the cardiovascular system.  20 C.F.R. § 404, Subpart P, App. 1(4.00).  Under the criteria provided to evaluate an impairment, emphasis is placed on the effects caused by the condition on the individual claimant, and not on the medical diagnosis itself.[1]  *Id.*  Specifically, when evaluating a

---

[1]  In 1994, extensive revisions to Section 4 of the Listing of Impairments placed emphasis on the effect of a condition(s) on the individual claimant, and not the particular medical diagnosis itself.  59 Fed. Reg. 6468 (Feb. 10, 1994).  The 2006 revisions continued the "effect" emphasis and eliminated several

claimant's hypertension, the Commissioner states that "because hypertension generally causes disability through its effects on other body systems, we will evaluate it by reference to the specific body system(s) affected." 20 C.F.R. § 404, Subpart P, App. 1(4.00)(H)(1).  Obesity is similarly evaluated based on its impact on the cardiovascular system, and the combined effects of the claimant's obesity and other impairments.  20 C.F.R. § 404, Subpart P, App. 1(4.00)(I)(1).  Cardiomyopathy, which does not have its own reference listing, is evaluated under the criterion for chronic heart failure (4.02), ischemic heart disease (4.04), recurrent arrhythmia (4.05), or the central nervous system (11.04) depending on the effect of the condition on the particular claimant.[2]  20 C.F.R. § 404, Subpart P, App. 1(4.00)(H)(3).

The ALJ's determination that Malloy's hypertension and obesity were severe, inherently included an evaluation of the claimant's cardiac system under step two and three of the analysis.  20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  The ALJ was required under the Listing of Impairments guidelines to specifically evaluate Malloy's body systems, including her cardiac system, when he found her hypertension and obesity severe.  The ALJ, however, found that Malloy's impairments did not meet or equal a listing set forth in 20 C.F.R. § 404 Subpart P, App. 1.  20 C.F.R. § 404.1520(d). Therefore, the ALJ concluded Malloy's severe impairments, considered in combination with her cardiomegaly and cardiomyopathy, did not significantly limit her ability to do basic work activities.  The ALJ's conclusion is supported by substantial evidence.

In his step three discussion, the ALJ relied on the testimony of the Commissioner's medical expert Dr. Martin Fechner, who concluded that despite Malloy's hypertension and obesity, the medical evidence of record did not demonstrate a cardiac impairment that met or equaled a listed impairment.  (R. at 15, 240.)  The ALJ then discussed the pertinent medical evidence, mainly Malloy's diagnosis of cardiomegaly and cardiomyopathy and her test results, and concluded that no evidence was presented which showed any "coronary artery involvement."  (R. at 15.)  The evidence of record supports the ALJ's analysis that Malloy's cardiomyopathy and cardiomegaly, either independently or in combination with Malloy's other impairments, did not meet or equal a listing set forth in the Listing of Impairments.  Therefore, the Court cannot find that the ALJ's assessment was unsupported by substantial evidence.

---

reference listings.  For example, both hypertension and cardiomyopathy no longer had their own reference listing.  Guidelines for considering these conditions are found in the section "Evaluating Other Cardiovascular Impairments."  The guidelines provide that these conditions are to be considered based on their effect on the individual claimant. 71 Fed. Reg. 2312 (January 13, 2006).

[2]  Cardiomegaly is mentioned only in 20 C.F.R. § 404, Subpart P, App. 1(4.00)(D)(2)(a) which describes the evidence needed to demonstrate chronic heart failure.

II.     **The ALJ's determination of Malloy's RFC was supported by substantial evidence.**

Malloy next argues that the ALJ erred in his determination that she is able to perform light work.  Specifically, Malloy asserts that the ALJ did not provide a reasonable explanation for his credibility assessment regarding Malloy's symptoms. (Pl.'s Br. 28-35.)  The Court disagrees.

RFC is an administrative assessment of the upper limit of work a claimant is able to perform given the limitations imposed by her impairments.  20 C.F.R. §§ 404.1545 and 416.945.  This determination is an issue generally reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(2).  Under the disability assessment, the claimant is required to provide medical and other evidence to prove her disability.  20 C.F.R. § 416.912. ("[claimant] must provide medical evidence showing that [she has] an impairment(s) and how severe it is during the time disability is claimed.")  20 C.F.R. § 416.912(c). Accordingly, a claimant cannot prove that she is disabled by subjective complaints of pain and other symptoms alone.  *See* SSR 96-7p (stating that symptoms unsupported by "medical signs and laboratory findings" cannot support a determination of disability). Subjective complaints must be accompanied by medical and other evidence that shows the claimant has a medically determinable impairment that could reasonably cause the symptoms alleged.  20 C.F.R. § 404.1529(b) (stating that "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present.")  Once a medically determinable impairment is established, the ALJ must then evaluate the intensity and persistence of the symptom(s), and the limitations caused on the claimant's ability to work.  *See* 20 C.F.R. § 404.1529.

Substantial evidence supports the ALJ's finding that Malloy is capable of performing light work.  Contrary to Malloy's argument, it is also clear that the ALJ gave appropriate consideration to her subjective complaints of shortness of breath, dizziness, fatigue, and weakness, but considered her representations regarding the extent of her limitations to be unsupported by objective medical evidence.  (R. at 16, 17.)  Thus, the ALJ found Malloy's representations as to the intensity, persistence and limiting effects of her condition to lack credibility.  The ALJ's determination is supported by substantial evidence.

It is well established that an ALJ may determine the extent to which the claimant is accurately stating the degree of the subjective symptom or the extent to which she is

disabled by it.  *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R.
§ 404.1529(c)).  The ALJ has discretion "to evaluate the credibility of a claimant and to
arrive at an independent judgment in light of the medical findings and other evidence
regarding the true extent of the pain alleged by the claimant."  *Brown v. Schweiker*, 562
F.Supp 284, 287 (E.D.Pa. 1983) (quoting *Bolton v. Sec'y of HHS*, 504 F.Supp. 288, 291
(E.D.N.Y 1980)).  In making a residual functional capacity determination, the ALJ must
consider all the evidence before him.  *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112,
121 (3d Cir. 2000).  The ALJ may consider whether there are inconsistencies in the
evidence and whether there are conflicts between the claimant's statements and the rest of
the evidence.  20 C.F.R. 404.1529(c)(4).  In a credibility determination, the ALJ does not
have to wholly reject or accept the claimant's statements and may determine that the
statements are credible to a certain degree.  SSR 96-7p.  The ALJ must however, indicate
the basis for conclusions that the claimant's testimony is not credible.  *See Cotter v.
Harris*, 642 F.2d 700 (3d Cir. 1981).

The ALJ properly considered all available medical evidence, including test results,
treatment notes, and expert opinions, when determining Malloy's RFC and the credibility
of her subjective symptoms.  In his decision, the ALJ gave controlling weight to the
assessments of  Dr. Fernando, Dr. Fechner, and the state agency medical examiner, who
each found Malloy capable of performing light work.  (R. at 16-17.)  Dr. Fernando did not
diagnose Malloy with a cardiac impairment, found that her heart had a regular rhythm and
no murmur, gallop, or rub was audible.  (R. at 168.)  Further, although Malloy had
complained of shortness of breath, Dr. Fernando found there was no evidence of
respiratory involvement.  (R. at 167.)  There was also no indication of any
musculoskeletal abnormalities or any other body system abnormality.  (R. at 166-169.)
Dr. Fernando diagnosed Malloy with hypertension, obesity, exertional dyspnea, and
diabetes, but deemed that her prognosis was fair and no objective limitations were found.
(R. at 168-169.)  Dr Fechner opined, when considering all of Malloy's conditions and
symptoms, she was capable of light work activity.[3]  (R. at 240.)  He further stated that
although Malloy's prescribed medication Lasix is presumptive evidence of some leg
swelling, there were no clinical signs of it.  (R. at 240.)  State agency medical consultant

[3]  20 C.F.R. § 416.967(b) provides in relevant part: "Light work involves lifting no more than 20 pounds
at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight
lifted may be very little, a job in this category when it requires a good deal of walking or standing, or
when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be
considered capable of performing a full or wide range of light work, you must have the ability to do
substantially all of these activities. If someone can do light work, we determine that he or she can also do
sedentary work, unless there are some additional limiting factors such as loss of fine dexterity or inability
to sit for long periods of time."

J. Hughes determined that Malloy could perform light work activity, specifically that claimant could lift ten pounds frequently and twenty pounds occasionally, and stand, walk, or sit up to six hours in an eight-hour workday.  (R. at 17, 173.)  Malloy has provided no other medical opinion regarding her ability to work.  The ALJ determined that the medical evidence did not support that Malloy's subjective complaints were as severe as she alleged.

Similarly, the ALJ also found that Malloy's subjective complaints were not supported by her daily activities.  The ALJ noted that Malloy's reported daily activities in May 2005 included cleaning, shopping, walking, cooking, and washing.  (R. at 16, 102, 103.)  Malloy stated that she shopped for food and clothes and went to church regularly.  (R. at 16, 106.)  Malloy also reported that she handled her own personal care, did go out alone, and traveled by walking, public transportation, and riding in a car.  (R. at 16, 105.)  Although Malloy testified that she rarely left the house alone, the ALJ found that no evidence was presented to account for her current inability to travel independently since she was able to do so in May 2005.  (R. at 236.)  The ALJ did not find that Malloy's accounts of her daily activities supported the severity of the complaints she alleged.

The ALJ considered objective medical evidence in concert with Malloy's subjective complaints, and concluded that although her complaints of shortness of breath, dizziness, and fatigue were reasonable to a degree, the overall record did not support debilitation to the extent alleged.  (R. at 16.)  The ALJ found that Malloy suffers from high blood pressure and obesity, but that despite diagnoses of cardiomyopathy and cardiomegaly, no objective medical evidence was presented to demonstrate any significant cardiac or other body system damage that would impact her ability to perform light work.  (R. at 15-17.)  The ALJ undertook a detailed and thorough analysis of the evidence in reaching his conclusion.  He discussed the various factors that should be considered in determining a claimant's RFC, and he listed the evidence that could be relied upon in weighing these various factors.  (R. at 15-17.)  The ALJ then relied upon his particularized findings regarding the medical evidence submitted and concluded that Malloy had the RFC to perform light work.  *Id.*  Thus, there is substantial evidence in the record to support the ALJ's determination regarding Malloy's RFC.

Malloy argues unsuccessfully that the ALJ did not provide a reasonable explanation for his credibility assessment of her symptoms.  (Pl.'s Br. 28-35.)  Malloy relies on *Schaudeck v. Commissioner*, 181 F.3d 429 (1999), which requires that the ALJ's decision contain specific reasons for his credibility finding that is supported by the case record.  *Id*. at 433. (referring to *Cotter v. Harris*, 642 F.2d at 705-706.)  Malloy argues that the ALJ's decision acknowledges her subjective complaints, but does not provide the type of thorough review required to explain why her symptoms are not entirely credible.

(Pl.'s Br. 29-34.)  However, her reliance on *Schaudeck* is misplaced.  In *Schaudeck*, the ALJ made only two short references to the medical evidence when evaluating the claimant's credibility, and did not consider the documented side effects of the medication the claimant was taking.  *Id.* at 433-435.  Further, the ALJ in *Schaudeck* accepted some of the claimant's statements contained in medical records as proof that she was not disabled, while ignoring identical statements made during the time he deemed she was disabled.  *Id.*  Thus, the court in *Schaudeck* concluded that the ALJ failed to properly consider the evidence in the case and failed to adequately explain his decision.  *Id.* at 435.

In the present case, the ALJ reviewed the entire record, discussed all relevant evidence, and thoroughly explained the reasoning behind his credibility assessment.  The ALJ considered all available medical evidence, including opinions, examinations and test results, as well as Malloy's self-reported daily activities.  Further, the record does not contain any conflicting evidence that would require the ALJ to provide an explanation as to why he accepted or rejected conflicting medical evidence and Malloy has not pointed to any probative evidence that was not discussed by the ALJ.  Therefore, the Court finds that the ALJ properly supported his credibility determination with substantial evidence from the record.

### III.   The ALJ properly considered the opinion of medical consultant, Dr. Fechner, when reaching his RFC determination.

Lastly, Malloy argues that the ALJ improperly discounted Dr. Fechner's opinion testimony.  Specifically, Malloy contends that the ALJ ignored Dr. Fechner's acknowledgment that Malloy's subjective symptoms were possible based on the medical record.  (Pl.'s Br. 29-30.)  Thus, Malloy concludes that the ALJ erred in his RFC determination that she is capable of light work.  The Court disagrees.

As stated in the previous section, RFC represents the *most* an individual can do despite limitations imposed by her impairments.  20 C.F.R. §§ 404.1545 and 416.945.  SSR 96-8p.  The ALJ must consider the entire record, but may make a credibility determination as to the degree of the claimant's subjective impairments and the extent of which she suffers disabling effects there from.  *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (stating the ALJ must consider all evidence before him when making a RFC determination).  *See Hartranft*, 181 F.3d at 362. (citing 20 C.F.R. § 404.1529(c)).  Dr. Fechner opined that Malloy could perform light work despite the limitations caused by her impairments.  (R. at 240.)  The ALJ gave great weight to, and properly considered, Dr. Fechner's opinion when he determined Malloy's RFC.

Malloy correctly offers that in his testimony, Dr. Fechner stated her complaints of

fatigue, weakness, and shortness of breath were possible based on her medical impairments.  (R. at 240, 243.)  Malloy contends that this portion of Dr. Fechner's testimony went unacknowledged by the ALJ in his RFC determination.  (Pl.'s Br. 30.)  Although the ALJ did not make a specific reference to this testimony, it is important to note that he did acknowledged Malloy's symptoms, but disputed the extent to which Malloy is debilitated by these conditions.  (R. at 15-17.)  Substantial evidence supports this assessment.

Dr. Fechner's testimony supports the ALJ's determination that Malloy's symptoms were only partially credible.  Dr. Fechner stated that although the symptoms alleged by Malloy are possible, the important focus in a disability determination is how severe the symptoms are.  (R. at 241.)  Further, when discussing the claimant's uncontrolled high blood pressure, Dr. Fechner stated that the essential inquiry is what damage has been done to the heart.  (R. at 242.)  Based on the medical evidence available to him, Dr. Fecher found that Malloy was capable of doing "no more than light work" and stated that with additional information, such as ECG, he could change his opinion.  (R. at 238-240.)  The ALJ left the record open so that Malloy could submit ECG results.  (R. at 12, 244, 245.)  No test results were submitted to the record and Malloy cannot rest upon the mere possibility that a new test might be sufficient for Dr. Fechner to alter his medical opinion.  (Pl.'s Br. 35.)  The burden to prove disability is on the claimant and she is responsible for providing medical evidence.  20 C.F.R. § 404.1514.  The ALJ is responsible for conducting a "full inquiry" into to the claimant's allegation of disability.  20 C.F.R. § 416.1444.  Here, the Commissioner provided a consultative exam by Dr. Fernando and an EKG.[4]  (R. at 166-170.)  No doctor prescribed or determined that an ECG was medically necessary.  Further, a great deal of medical evidence was presented, which included treating notes from Malloy's physician, Dr. Fernando's consultative exam results, two EKG tracings and an x-ray.  (R. at 138-165, 179-188, 166-169, 170, 190, 191.)  It would be illogical and overly burdensome to require an ALJ to order tests to disprove evidence submitted by a claimant because such evidence may change a doctor's determination of the claimant's limitations.

It is clear that the ALJ reviewed and considered all of the relevant evidence.  The ALJ left the record open so Malloy could introduce further evidence to support her allegations of disability, and no additional information was provided.  Thus, the record substantially supports the ALJ's RFC determination.

---

[4] Dr. Fernando examined Malloy at the Commissioner's request in May 2005.  Dr. Fernando also ordered the May 2005 EKG.

## CONCLUSION

For the foregoing reasons, the ALJ's decision to deny SSI and DIB benefits to Plaintiff Aurella B. Malloy is **AFFIRMED**.  An appropriate Order accompanies this Opinion.

s/William J. Martini     

William J. Martini, U.S.D.J.
